```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                           DALLAS DIVISION

UNITED STATES OF AMERICA,    )   Case No. 3:21-cr-00054-N-1
                             )
        Plaintiff,           )
                             )   Dallas, Texas
V.                           )   December 21, 2022
                             )   10:00 a.m.
DANIEL REY SETTLE,           )
                             )   DEFENDANT'S LETTER MOTION
        Defendant.           )   TO APPOINT NEW COUNSEL (#109)
                             )
_____)

                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE IRMA CARRILLO RAMIREZ,
                 UNITED STATES MAGISTRATE JUDGE.

APPEARANCES:

For the Government:          Myria Boehm
                             UNITED STATES ATTORNEY'S OFFICE
                             1100 Commerce Street, Third Floor
                             Dallas, TX  75242
                             (214) 659-8600

For the Defendant:           Mark L. Watson
                             MARK L. WATSON
                             5851 McCommas Blvd.
                             Dallas, TX  75206
                             (214) 912-8181

Recorded by:                 Marie Gonzales
                             UNITED STATES DISTRICT COURT
                             1100 Commerce Street
                             Dallas, TX  75242-1003
                             (214) 753-2167

Transcribed by:              Kathy Rehling
                             311 Paradise Cove
                             Shady Shores, TX  76208
                             (972) 786-3063


         Proceedings recorded by electronic sound recording;
           transcript produced by transcription service.
```

1          DALLAS, TEXAS - DECEMBER 21, 2022 - 9:58 A.M.

2             THE CLERK:  All rise.

3             THE COURT:  Good morning.  Please be seated.

4       All right.  We are here in the matter of United States

5  versus Daniel Settle.  This is Criminal Action 3:21-cr-54-N.

6  And before the Court this morning, pursuant to the District

7  Court's order of reference, is the correspondence from Mr.

8  Settle requesting to terminate and substitute his attorney of

9  record.

10      If counsel would please make their appearances for the

11 record.

12            MS. BOEHM:  Myria Boehm for the United States.

13            MR. WATSON:  Mark Watson for Mr. Settle, ma'am.

14            THE COURT:  All right. Mr. Watson, have you had a

15 chance to visit with your client about this correspondence?

16            MR. WATSON:  I have, Judge.

17            THE COURT:  And why don't you remain seated so that

18 you can be closer to the microphone.  The closer you are to

19 it, the better recording we get and the better I can hear you.

20 And rather than having you go up to the podium and share the

21 podium, we're going to maintain some social distancing here.

22 But it's important that you be close to the mic.

23            MR. WATSON:  Yes, Judge.

24            THE COURT:  All right. So you've had a chance to

25 visit with Mr. Settle?

1        MR. WATSON: I have.

2        THE COURT: Has anything changed since the filing of
3  the correspondence?

4        MR. WATSON: We -- you know, sometimes yes, sometimes
5  no. I think we have a plan for trial, but he -- I believe he
6  still wants to proceed with his motion.

7        THE COURT: All right. So, Mr. Settle, you are still
8  asking the Court for a different attorney; is that correct?

9        THE DEFENDANT: Yes, ma'am. We've had a complete
10 breakdown of communication. I have conveyed several wishes
11 and requests to my attorney since he took my case almost ten
12 months ago, back in March, I think the last time we were here.
13 He has definitely put my case on the back burner. He's told
14 me several times to, excuse my language, --

15       THE COURT: I read it. You don't need to say it.

16       THE DEFENDANT: Yes, ma'am. He's told me several
17 times to shut up. He's told me basically that -- that he --
18 that he believes that I'm a pimp and this and that. And I
19 just, I cannot trust or go forward with him as my defense
20 counsel and knowing that -- what he thinks about me and
21 knowing that -- how he feels about me. And like I said, we
22 just -- communication has completely broke down between me and
23 him. I can't -- I can't go forward in my case with him on my
24 defense now.

25       THE COURT: Okay. All right. So I'm going to ask

```
 1  you a few questions.
 2              THE DEFENDANT:  Yes, ma'am.
 3              THE COURT:  Raise your right hand for me.
 4       (The Defendant is sworn.)
 5              THE COURT:  All right.  You can put your hand down.
 6       All right.  It looks like Judge Toliver appointed Mr.
 7  Anthony Eiland to represent you back in February of 2021.  And
 8  then, let's see, you had a subsequent attorney before Mr.
 9  Watson.  I'm trying to find the date that happened.  Let's
10  see.  Is Mr. Perez also representing you?  Mark Perez?
11              MR. WATSON:  Mr. --
12              THE DEFENDANT:  No.  No, Your Honor.
13              MR. WATSON:  Mr. Perez did an entry of appearance as
14  second chair to help me at trial.  And that was granted.
15              THE COURT:  Okay.  All right.  So you originally had
16  an appointed attorney.  Then you moved to substitute
17  attorneys.  Yeah.  All right.  So Judge Toliver gave you an
18  attorney, Mr. Eiland.
19              THE DEFENDANT:  Yes, Your Honor.
20              THE COURT:  You asked to have him terminated and to
21  have a new attorney appointed back in March of this year.
22              THE DEFENDANT:  Yes, Your Honor.
23              THE COURT:  And that was when Mr. Watson was
24  appointed.
25              THE DEFENDANT:  Yes, Your Honor.
```

1       THE COURT: And now you're here again asking for a
2 third attorney.
3       THE DEFENDANT: Yes, Your Honor. This will be my
4 last time asking for a substitution of attorney. I -- quite
5 honestly, Your Honor, if I may be frank with the Court, I
6 just -- I'm starting to lose faith completely in the court-
7 appointed attorneys. It seems like their main objective is
8 to -- so far, from my experience, and not just my experience,
9 from what I've seen with other federal detainees, that their
10 main objective is just to get their client to plead guilty
11 and get them on through the process. Which, I mean, I
12 understand from a business standpoint that makes sense for
13 the attorney, but when you're dealing with the type of case
14 that I have and the type of time that I'm looking at, and I'm
15 consistently telling my attorney of my constitutional rights
16 that have been violated from the beginning of this case, and
17 they -- and they pay no mind to it or they just brush you off
18 or tell you that what you're saying is invalid or -- and this
19 and that, and you're constantly telling them that you want to
20 go to trial and all they do is come and tell you to take this
21 plea or take that plea, and they don't even discuss defense
22 strategies or trial strategies with you. It -- it's -- it's
23 really -- it's very, very discouraging, very disheartening,
24 and it makes you lose faith in the -- in the legal system,
25 period.

1    And I understand, I don't mean to drag this out or
2  anything like that, but my life is literally on the line, and
3  I have four children.  I was an active parent.  And this is a
4  very, very big deal to me.  And I cannot trust my life in the
5  hands of somebody who just doesn't seem to care or doesn't
6  seem to even want to speak up for me or anything.
7    You know, we -- we started a trial, and, you know, the
8  prosecution got up, she did her job, she did what she was
9  supposed to do, she made opening statement, she called
10 witnesses.  I've told my attorney of -- of witnesses on my
11 behalf.  Nobody was called.  There was not an opening
12 statement made on my behalf, which I would also like the
13 record to reflect that I have been deprived in the ability to
14 -- to contact and locate witnesses and gather evidence in my
15 defense because I have been incarcerated for almost two years
16 now.
17     So, I mean, I -- the fairness of this process has been
18 completely skewed, and it's just very, very disheartening.
19 And I -- and I beg of the Court to please try to find me
20 somebody that will please fight.  I -- I want nothing more
21 than just to be home with my kids and to be a daddy.  That's
22 all I want.  And I'm begging the Court to please find me
23 somebody that will actually fight my case and not just put me
24 on the back burner and not care.
25           THE COURT:  I understand, sir, that you find

1  yourself in a position that you do not wish to be in.
2          THE DEFENDANT:  Yes, ma'am.
3          THE COURT:  I am sorry to hear you say that you are
4  losing faith in the system.  But it's important that you
5  understand:  We take -- the Court takes its responsibility to
6  find attorneys very seriously.
7     First of all, they're not required to be here.  Mr.
8  Watson was asked if he would take your case.  He didn't have
9  to say yes.  But he did.
10          THE DEFENDANT:  Yes, Your Honor.
11          THE COURT:  Attorneys are paid at a reduced rate for
12 taking these cases, when they could be making more money on
13 retained cases.
14          THE DEFENDANT:  Yes, Your Honor.
15          THE COURT:  But they take their responsibility to
16 serve the Court and to ensure access to quality legal
17 representation.
18          THE DEFENDANT:  Yes, Your Honor.
19          THE COURT:  Every attorney on that Panel has gone
20 through a screening process.  There are requirements for them
21 to be on that Panel.  And every attorney, for the most part,
22 except for the new ones who are required to kind of ride
23 along with a more experienced attorney, has been a criminal
24 defense attorney for years.  They have years of experience,
25 not just in criminal law, but in criminal law in this

1  courthouse, doing the kinds of cases that are in this
2  courthouse.  They know the cases.  They know the judges.
3      So I'm disappointed to hear that you think that the
4  quality is not good, because these are sometimes Board-
5  certified attorneys agreeing to take cases.
6      The other thing is that each attorney has a duty to give
7  you his or her best legal advice.  That does not mean what
8  you want to hear.
9          THE DEFENDANT:  Yes, Your Honor.
10         THE COURT:  It doesn't mean agreement with you.  It
11 means that they have assessed the case based on their years
12 of experience and training and experience with the
13 prosecution.  Because of the number of cases they do, they
14 know the prosecutors as well.
15     If there's a recommendation made, it is a recommendation
16 that the attorney deems to be in your best interest.  Again,
17 not what you want to hear, but after having looked at the
18 evidence and assessed the strength of the evidence.
19     Effective representation means just that:  being
20 effective.  And telling you what you want to hear and doing
21 what you want to do, especially if there's no basis in law
22 for it, is not necessarily effective.
23     If I give you another attorney -- because you, you're set
24 for trial next month.  At this point, nobody knows more about
25 your case than Mr. Watson.  A new attorney is going to have

1  to hit the ground running, and may need to push back the
2  trial date to be able to be fully familiar with your case.
3  That pushes back the time that you are in custody.
4          THE DEFENDANT:  Yes, Your Honor.
5          THE COURT:  That attorney may ultimately have the
6  same assessment that Mr. Watson has about your chances at
7  trial and whether it's in your best interest to plead.
8     Now, it is your choice.  It is your life.  It is your
9  decision.  It sounds like Mr. Watson is ready to take this to
10 trial for you if that is what you want.  Ultimately, it's
11 your decision, as I said.  But just because you get another
12 attorney doesn't mean that you're going to get a different
13 opinion.
14         THE DEFENDANT:  Yes, Your Honor.
15         THE COURT:  There is case law in our circuit that
16 says continually firing or asking to have new attorneys
17 appointed at some point constitutes a waiver of the right to
18 counsel.
19         THE DEFENDANT:  Yes, Your Honor.
20         THE COURT:  You're asking for the appointment of a
21 third attorney.  You are right at that line.
22         THE DEFENDANT:  Yes, Your Honor.
23         THE COURT:  Should you disagree with a third
24 attorney, there's not going to be any coming back and saying,
25 I want Mr. Watson back.  He's not here to necessarily hold

1    your hand.  You know, sometimes we wish attorneys would be a
2    little nicer about it, but you know what, he is here to give
3    you what you need, not necessarily what you want, and that is
4    effective representation.  And that's going to be the same
5    for the attorneys on the Panel or they wouldn't be on our
6    Panel.  Okay?
7             THE DEFENDANT:  Right.
8             THE COURT:  That means he has to look at everything.
9    You may want to call a certain witness because you think that
10   witness will help your case.  He may look at that witness and
11   say, Yeah, it'll help a little bit, but it's going to hurt
12   more than help and maybe that's not a good idea.  Because,
13   again, his job is to look after your best interests and to
14   see things based on his experience and training that you
15   don't necessarily see.
16      He will give you your best advice -- his best advice.
17   It's up to you whether to accept it.  But just know that if
18   you want another lawyer, you're not necessarily going to get
19   another opinion, you're not necessarily going to get somebody
20   who's going to do everything you want him or her to do the
21   way you want him or her to do it and who's going to be nicer
22   to you or hold your hand the way you want to.  They're trying
23   to do their best for you according to the legal system, not
24   be your best friend.
25             THE DEFENDANT: Yes, Your Honor.  I understand.

1                THE COURT:  So if you want me to relieve Mr. Watson
2    of his duties, again, knowing you've got trial set next month
3    and nobody knows more about this than you do, and while this
4    delay is happening the prosecution is continuing to prepare
5    its case, interview witnesses, possibly find more evidence,
6    these are all things that go into the calculation of advice
7    that your attorney gives you.
8                THE DEFENDANT:  Yes, Your Honor.
9                THE COURT:  Mr. Watson?
10               MR. WATSON:  Judge, I'd like to -- just for --
11               THE COURT:  Can you move the microphone a little
12   closer to you?  Thank you.
13               MR. WATSON:  Your Honor, before the Court makes a
14   decision, I'd like to just comment on some of the allegations
15   my client has made.
16        Just now, he said no witnesses were called, that I
17   neglected to call witnesses that he wanted me to.  That's
18   false.  For the first time ever, after the trial this week, he
19   suggested I locate one witness.
20        He never asked me to make an opening statement.  That
21   infuriated him that I didn't make an opening statement.  I
22   didn't think it was in our best trial strategy to make an
23   opening statement.
24        My investigator has spent -- has been to visit Mr. Settle
25   three times, and Mr. Settle has rebuffed efforts to review

1   audio testimony.  Or, phone calls.
2       I could go on, but it's -- the -- I have spent hours and
3   hours trying to correct false impressions or false thought
4   processes in his mind regarding upward departures, acquitted
5   conduct, and sentencing issues.
6       On some of the -- some of the testy exchanges we've had,
7   I've been to relay two separate plea offers that were complex
8   and intricate, and he wanted to tell me three or four things,
9   and I said, We have to discuss these first and then we'll get
10  to your issues.  And that's probably some of the times that I
11  used some tough language.
12      Ms. Boehm reoffered one of the very first plea offers, and
13  then she improved on that about a month before trial.
14      The -- and I guess some of the main points are is that
15  I've spent hours and hours and hours correcting false beliefs
16  and -- that Mr. Settle has about his sentence or about his --
17  the law or about what can happen to him.  And it's my
18  obligation, when Ms. Boehm sends me an offer or conveys an
19  offer to me, I'm obligated to go tell him.  And in the past,
20  he has commented to me that I never bring him any good news,
21  it's always bad news, and he's mad that I think he's a pimp.
22  And I think the record shows he's a pimp; the question is, is
23  he a trafficker?
24      And so, anyway, we do have some -- you know, sometimes we
25  get along perfectly and he's competent, smart, and can move

1  forward.
2      So I just wanted to correct a few things.  And if the
3  Court wants me to go into deeper details, we could -- I could
4  ask to -- Ms. Boehm to leave the courtroom, because we could
5  -- we could make this hearing an hour-long hearing.  And
6  that's all I have, Judge.
7          THE COURT:  Thank you.
8          MS. BOEHM:  And Judge, I would like to put the
9  Government's position on the record, if I could.
10     This, as the Court correctly stated, this is the second
11 attorney for Mr. Settle appointed by the Court.  We had had
12 extensive communications and conversations with Mr. Eiland and
13 Mr. Watson as we've moved along through this process.  Even in
14 Mr. Eiland's representation, there were multiple times where
15 he communicated to us that Mr. Settle was asking for a plea
16 offer, and we gave multiple different ones and options.  But
17 each time we gave them, per his request, Mr. Settle then
18 wouldn't take them, which is his prerogative.  But we've done
19 everything we could and worked with counsel.  Mr. Eiland filed
20 multiple motions that we had to respond to pretrial, well in
21 advance of even a trial setting.
22     Mr. Settle claimed the same communication breakdown and
23 the same language before this Court back in March of 2022,
24 which was approximately a month and maybe a week or two before
25 the last trial was set to begin.  In this case, he is

1  asserting the same problems verbatim that he did the last
2  time, and this time we're again set for trial in a month,
3  except this time Mr. Settle has had the opportunity to hear
4  his own words read aloud quite extensively for hours in front
5  of the jury, and he's in -- he's in a worse position.
6       There has been -- Mr. Watson has filed an incredible
7  amount of motions that we've had to respond to and research,
8  filed motions in limine.  He even filed a successful motion to
9  dismiss one of the counts.  It was without prejudice, and so
10 we were able to re-indict that quickly before trial.  But from
11 the Government's perspective, the work that we've had to put
12 into it is partly due to Mr. Watson's efforts and Mr. Eiland's
13 before him.
14      The Government's perspective, because one of these counts
15 is an obstruction of an official proceeding, back in February
16 of 2021 Mr. Settle was ordered not to communicate with a
17 victim, the named victim in this case, and there was some
18 argument back and forth between he and Judge Toliver about
19 that fact and about his beliefs about why he should be able to
20 communicate with this victim.  But nevertheless, it was
21 ordered he refrain from doing so.
22      And we've obtained a superseding indictment multiple times
23 over extending -- extending out the time frame of Mr. Settle's
24 complete disregard for court orders and continued
25 communication with the victim, until his communications were

1   finally cut off by the U.S. Marshals in early February 2022.
2       There is nothing from the Government's perspective that
3   any other attorney could provide Mr. Settle that would satisfy
4   him, based on the communications we've had with him in our
5   office, but also based on the efforts that both of his
6   attorneys have gone to.
7       This is a case that involves a victim.  We're continually
8   having to reschedule her to be here.  We have a BOP inmate who
9   was transferred over from another state.  We have out-of-state
10  witnesses.  And it was unfortunate that trial ended the way it
11  did the first week of December.  But we're ready to proceed.
12  And especially I put on the record at trial, once that
13  mistrial occurred, that the Government was willing to proceed
14  with eleven jurors.  Mr. Settle was not.  And he has filed
15  repeated motions about Speedy Trial and wanting his trial, yet
16  every opportunity he has to have it, it seems as if he wants
17  to continue to push the ball.  And we believe that's a delay
18  tactic and no different than it was with Mr. Eiland.
19           THE COURT:  All right.
20           THE DEFENDANT:  May I speak, Your Honor?
21           THE COURT:  You may, but you may not want to.
22  Ultimately, the question is, do you want a new attorney?  I'm
23  going to assume that you disagree with what Mr. Watson has put
24  on the record and what Ms. Boehm has put on the record.  I'm
25  going to assume that you disagree.  You don't have to tell me

1   exactly how and why.  I'm just going to assume that.
2        The question is, do you still want a new attorney, knowing
3   -- having heard the Government's position, having heard what
4   Mr. Watson put on the record, having heard my admonitions
5   about the Criminal Justice Act Panel and what the attorneys'
6   duties are and what continually asking for a new attorney
7   means?
8       Again, your case, your decisions.  They give you advice.
9   You choose whether to take it.  So, do you want a new
10  attorney?
11             THE DEFENDANT:  Yes, Your Honor.
12             THE COURT:  All right.
13             THE DEFENDANT:  For the record, please, I mean, --
14             THE COURT:  I can't hear you.  You need to speak up
15  and get closer to the microphone.
16             THE DEFENDANT:  For the record of the Court, I don't
17  -- I don't mean any disrespect.  I don't mean to delay
18  anything.  But they talk about the motions that were filed by
19  each of my attorneys.  Those motions were motions that I
20  personally filed after asking my attorneys several times to
21  file them, and then I filed them myself and they didn't get
22  accepted, so then, months later, my attorney would go back and
23  file the motion that I wrote out verbatim by my own
24  handwriting and my own legal research, just for the record to
25  show.

Case 3:21-cr-00054-N   Document 120   Filed 01/17/23   Page 17 of 20   PageID 476

17

1     And I, once again, I don't mean any disrespect.  It's a
2 very, very important matter to me.
3         THE COURT:  Okay.  So maybe you think you're a better
4 attorney than your attorneys are.  You do have the right to
5 represent yourself.  If you would like that right, we would
6 have to have a separate hearing if that is what you wanted to
7 do.  I want to be sure that that's what you're asking.  Is
8 that what you're saying, is that you want to be your own
9 attorney?
10         THE DEFENDANT:  A substitution of attorney.
11         THE COURT:  Okay.  Yes, sir?
12         MR. WATSON:  Do you want to represent yourself?
13         THE DEFENDANT:  The Judge just asked me that, and I
14 answered her question.
15         THE COURT:  All right.  I believe he said no, Mr.
16 Watson.
17     All right.  And, again, you understand that bringing on a
18 new attorney at this stage could delay these proceedings; that
19 attorney will not have had the time and history with this case
20 that Mr. Watson has had?
21         THE DEFENDANT:  Yes, Your Honor.
22         THE COURT:  And that means that you could end up
23 staying -- awaiting trial longer because the attorneys need to
24 go through the evidence and to get up to speed?
25         THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  And we are at the holiday, so that's
2   going to impact it as well.
3        THE DEFENDANT:  I understand, Your Honor.
4        THE COURT:  And you still want a new attorney,
5   knowing everything that we've talked about today, what Mr.
6   Watson has said, what Ms. Boehm has said?
7        THE DEFENDANT:  Please, Your Honor.  Yes.
8        THE COURT:  All right.  Mr. Watson, as much as it
9   pains me to do this, you are hereby relieved of your duties of
10  representation, with the thanks of the Court for accepting the
11  case to begin with, for all of the work you've put into it,
12  and for always being available to take cases.  So, thank you.
13       MR. WATSON:  Thank you, Your Honor.
14       THE COURT:  Mr. Settle, I don't have a new attorney
15  for you today.  I'm going to have to go through the list.  And
16  of course, we will have to tell them that you have fired two
17  attorneys already, and so that may affect who's willing to
18  take your case.  So it may take us a couple of days, but we
19  will go ahead and find someone hopefully who's willing to take
20  the case and to represent you.
21     Good luck to you, sir.  I'm sorry you find yourself in
22  these circumstances.  I don't think there's going to be a lot
23  of good news for you.  There's generally not good news in a
24  prosecution of this type, given what you face.  So I don't
25  want your expectations to be unrealistic.  The chances of good

1   news are not great.  But good luck to you, sir.
2           THE DEFENDANT:  Thank you, ma'am.
3           THE COURT:  We are adjourned.
4           THE CLERK:  All rise.
5      (Proceedings concluded at 10:24 a.m.)
6                     --oOo--
7
8
9
10
11
12
13
14
15
16
17
18
19
20                    CERTIFICATE
21      I certify that the foregoing is a correct transcript from
22  the electronic sound recording of the proceedings in the above-entitled matter.
23    **/s/ Kathy Rehling                              01/16/2023**
24  _____    _____
     Kathy Rehling, CETD-444                           Date
25  Certified Electronic Court Transcriber

20

## INDEX

```
PROCEEDINGS                                                        2

WITNESSES

 -none-

EXHIBITS

 -none-

RULINGS                                                           18

END OF PROCEEDINGS                                                19

INDEX                                                             20
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Case 3:21-cr-00054-N   Document 120   Filed 01/17/23   Page 20 of 20   PageID 479